Towns v. Harris.

ROBERT J. TOWNS v. SAMUEL HARRIS AND OTHERS.

Where property is sold under several executions, if one of the executions is valid, the sale is good.

A return by a Deputy Sheriff, in his own name, as "D'p. Sh'ff," is sufficient.

If an execution was void, a sale under it was void, a twelve months bond taken at such sale was void, and a sale on an execution issued on such bond was also void.

A sale of real property after the return day of the execution is void.

*Quere,* where the Act, pending which an execution has issued, is repealed pending the execution ?

A twelve months bond, under the execution law of 1839, gave no lien on any other property than the property purchased, until after forfeiture. *Quere,* whether this case does not intimate that it did not give such lien even after forfeiture ?

See this case for circumstances under which it was held that a purchaser from a judgment debtor took a better title than a subsequent purchaser at Sheriff sale, on the ground of the negligence of the judgment creditor, although execution had been continuously issued and returned from term to term.

It seems that a purchaser from a judgment debtor can plead the statute of limitations against a subsequent purchaser at execution sale under the judgment, although the lien of the judgment may have been preserved by the regular issue and return of executions. And see special circumstances.

Appeal from Brazoria. Action of trespass to try title, commenced Oct. 16th, 1846, by appellant against appellees. The statement of facts showed that it was proved, that Edwin Waller owned and possessed the premises sued for, from the 17th day of Dec., 1836, to the 21st of May, 1840 ; that on said 21st May, 1840, said Waller sold said premises to Mosely Hooker, and on the same day, said Hooker conveyed said premises in trust to John W. Harris and E. M. Pease to secure certain notes due to Edwin Waller ; that said notes and deeds of trust were transferred to Samuel Harris, one of the defendants, about July, 1841, and Waller had no interest in the note and deed of trust after July, 1841 ; that on the 17th January, 1844, the said trustees sold said premises, according to the terms and conditions of the trust, and in compliance

therewith, and that said Samuel Harris was the purchaser; that the requisitions prescribed in the trust for a sale were complied with; that said Hooker, owned and possessed and paid taxes on said premises from the sale by Waller to him on the 21st May, 1840, to the 17th Jan. 1844, when the sale was made by the trustees to said Samuel Harris; that from that time to the trial said Samuel Harris owned, possessed, and paid taxes on said premises; that all said sales and conveyances were duly recorded in the county where the premises are situated.

The plaintiff claimed title to the premises sued for, under a sale made by the Sheriff of Brazoria county on the 5th day of November, 1845, by virtue of eleven executions, issued from the District Court of Brazoria county on the 14th day of Oct. 1845.

The plaintiff, in support of his title, read in evidence a judgment of the Brazoria District Court in favor of George Wright v. Thomas J. Green, rendered on the 24th of October, 1839, and an execution on said judgment dated 25th Jan. 1840.

He also offered to read the endorsements on said execution, a bond and ten executions issued on said bond, with the endorsements and returns on said executions, all of which were excluded by the Court, and exceptions were taken by plaintiff. The facts respecting the return on the executions and bond are stated in the opinion of the Court.

The plaintiff then read a judgment of said Court, in favor of John R. Oakley v. Edwin Waller, rendered on the 18th day of March, 1840, with a stay of execution for one year less one day, and an execution on said judgment, dated 17th March, 1841, with an endorsement thereon, dated 10th Sept., 1841, "stayed by order of plaintiff's attorney, W. McMaster, Deputy Sheriff."

He also offered to read nine other executions issued on said judgment, with the endorsements and returns on the same, all of which were excluded by the Court, to which ruling the plaintiff excepted.

The second execution, being the first of the nine, excluded, was dated 1st Feb. 1842. This execution had an endorsement on it showing that on the 9th of Feb., 1842, it was levied on the premises sued for, and also that it was again stayed by order of plaintiff's attorney, 1st March, 1842. The return was signed " W. McMaster, Dep. Sh'ff."

The third execution was dated the 8th of April, 1842 ; it had an endorsement on it stating it was stayed by order of plaintiff's attorney, 1st of Oct. 1842.

The fourth execution was dated 10th of Nov. 1842, and had the following return on it: "rec'd Nov. 10th 1842. No property found. March 1st, 1843. W. McMaster, Sh'ff."

The fifth execution was dated 24th April, 1843, and had no return or endorsement on it.

The sixth execution was dated 9th of Oct., 1843. This execution had an endorsement on it stating that it was received on the 14th March, 1844, and on the 15th March, 1844, it was levied on the premises sued for, and not having time to sell under this execution, it is therefore returned. March 15th, 1844. W. McMaster, Sheriff.

The seventh execution was dated 3d of April, 1844. This had an endorsement on it, stating that it was received 3d April, 1844, and on the same day was levied on the premises sued for, and advertised the same for sale, on the first Tuesday in May, 1844. Also " May 7th 1844, property not offered for sale by order of plff's att'y, William McMaster, sheriff, by Jarvis Dockrill, Dep. Sheriff."

The eighth execution was dated 21st of Sept. 1844, and had an endorsement on it as follows: " This execution was placed in my hands by W. McMaster late sheriff, too late to levy before the Term of the Court. I therefore return it without levying. March 15th, 1845. Jno. W. Brooks, sh'ff.

The ninth execution was dated 7th May, 1845. There was an endorsement on it stating that it was received 12th May, 1845, and on the 8th June, 1845, it was levied on the premises sued for ; that the same was advertised for sale on the

first Tuesday in July, 1845, and on the 1st of July, 1845, the sale was postponed by consent of plaintiff's attorney. There was also a credit of $8213 88 endorsed on this execution, dated 1st April, 1844.

The tenth execution was dated 14th Oct., 1845, and there was an endorsement on it stating that it was received 14th Oct., 1845, and on the same day it was levied on the premises sued for; that the same was advertized for sale on the first Tuesday in Nov., 1845 ; that on that day the premises were appraised and sold to R. J. Towns, the plaintiff in this suit.

The executions all read like originals. It is not considered necessary to state the facts as to the executions on the other judgments. None of them made a better case for the plaintiff, than those which have been detailed. By Act of Jan. 29th, 1840, the Terms of the District Court of Brazoria commenced third Mondays in March and October. By Act of January 16th, 1843, they were changed to third Mondays in March and September. The 17th March, 1841, was the third Monday in that month.

The other facts will be found in the opinion of the Court.

*Wilson & Quinan*, for appellant.

*Harris & Pease*, for appellees.

LIPSCOMB, J. This is an action to try title, in which the appellant was plaintiff in the Court below, and the appellees were the defendants.

The petition was filed 16th October, 1846, and states that on the 1st day of January, 1846, the plaintiff was legally seized and possessed of one thousand acres of land in Brazoria county, which is particularly described ; that defendants, on the said first day of January, 1846, forcibly and illegally entered upon the same, and forcibly ejected the plaintiff from the same ; and concludes with a prayer for a citation, and for judgment for the land and damages, &c. &c.

On the 29th October, 1846, defendants filed a general demurrer and an answer, and several amendments were added thereto, at different times, in which they admit that they are in possession of the premises sued for, but say they are not guilty of the trespasses complained of in the plaintiff's petition. They also set up title to the premises in question, and particularly set forth and describe their title, and they allege that they and those under whom they claim, have had peaceable possession since the 21st May, 1840, and plead the limitation of three years and five years. On the 18th May, 1849, the cause was tried, the demurrer overruled, and a verdict and judgment for the defendants, a motion for a new rtial which was overruled, and plaintiff appealed.

The errors assigned are, 1st, that the Court erred in refusing to admit in evidence the several executions and twelve months bonds, set out in appellant's bill of exceptions, and offered by him.

2d. The Court erred in refusing to permit the Clerk to amend the several executions set out in the bill of exceptions.

3d. The Court erred in refusing to permit the Sheriff to amend his returns upon the several executions set out in his bill of exceptions.

4th. The Court erred in overruling the appellant's motion for a new trial.

It may be observed, before entering into an examination of the errors assigned, that appellant claims title as purchaser at sheriff's sale, by virtue of eleven executions, sued out on so many different judgments. All of the executions were levied on the land sued for, and the sale was under the joint levy of the whole of them. If any one of them could give a valid title, it will sustain the title of the appellant. It will therefore become necessary to discuss the plaintiff's title under each of them.

The first assignment refers to an execution issued 25th January, 1840, on a judgment in favor of George Wright v. Thomas J. Green, and levied, 30th January of the same, on cer-

tain lots situated in the town of Velasco, the levy signed Wm. McMaster, Dp. Sh'ff; property sold to Thomas J. Green, on twelve months' credit bond, for the amount of the within execution, including costs, and his bond is herewith returned. May 5th, 1840, W. McMaster, Dp. Sh'ff.

In support of the ruling of the Court below, it is contended, that, admitting that McMaster was the Deputy Sheriff of the county, it would not follow that he could make a return in his own name to his official acts, but that it ought to have been made in the name of his principal, the Sheriff. This ground is not well taken. The Deputy Sheriff is an officer known to the law; and as such, his official acts are to be regarded as valid.

It is further contended that proceedings, under the execution, and the Sheriff's return are without authority of law and void. At the date of the issuance of the execution referred to, i. e., 25th January, 1840, the Act of the Congress of Texas of the 26th January, 1839, was supposed to be in force; by the 4th Section of which Act (Hart. Dig. Art. 1274,) all executions were required to be returnable within ninety days from the date of their issue. By the 5th Section of the same Act, the sale of land or slaves is required to be advertised thirty days; and by the 8th Section it is provided that if the property levied on will not sell for two-thirds its appraised value, it is immediately to be advertised in the same way, and sold on a credit of twelve months, with a bond to be returned with the execution, and if the bond should be forfeited, its forfeiture is to be regarded as a judgment, and execution to be issued thereon against the purchaser and security, which execution is to be levied on the property of the principal and his securities, which shall be sold for cash without apprai.sement. (Hart. Dig. Art. 1277).

The validity of the execution, issued at the suit of Wright v. Green, under which a sale was made and a twelve months bond given for the purchase money taken, is very important. If it was not valid, the sale was void under it; and the twelve

months' bond to which Waller was security, was also viod ; as the plaintiff claims under an execution issued upon the forfeited twelve months' bond and a levy and sale upon the property of Waller, as the security upon the bond forfeited. The execution in favor of Wright seems to have been issued on the 25th January, 1840, and under the statute before noticed, was returnable on the 26th day of April, A. D. 1840, to make it within ninety days. It would seem, then that on the 5th of May, 1840, when the sale on a credit and the twelve months' bond purports to have been made, that the execution had previously become *functus officio*, and the sale and bond taken under it were void ; and, if so, it was properly rejected, although the Court below may have asisgned an illegal reason for such rejection. The Act of the 26th January, 1839, under which the execution we have been considering was issued, was repealed by its caption on the 5th February, 1840, to take effect from its passage. By this repeal, there was no execution law in force from the date of the repeal until the 16th of March following, when the Act concerning executions went into operation, as the common law Act did not go into effect until the same time that the Act concerning executions took effect. We are not aware that the question has ever been raised in this Court, as to the effect of the repeal of the execution law of 1839, and leaving no other in force at the time when the repeal took effect. The question as to the effect of repealing a law was discussed with great labor and ability by Mr. Justice Cowen in the case of Butler v. Palmer, 1 Hill, 324 ; in fact, he seems to have reviewed all the authorities in England and in the United States, and exhausted the subject; and, from his conclusion, in which his associates concurred, the appraisement, the sale and credit of twelve months, and the execution, in fact everything authorized by the repealed Act, became involved in the repeal, and could no longer be made available, as to everything that had been commenced under it, but not completed. If the execution was void, the twelve months' bond, taken under it, would be void ; and its forfeit-

ure could give no lien on the property of Waller, the security on the bond.

But, suppose we choose not to adopt the opinion and the doctrine of the Supreme Court of New York, in the case cited, and to hold that the repealing Act was not intended to embrace proceedings then begun and in progress under the Act repealed, but such matters were intended to be excepted, and should be carried out and finished under the repealed statute, would it strengthen the plaintiff's claim? It is believed that it would not, because, under the repealed Act, execution was required to be returned in ninety days from its issue, and the sale made and the twelve months' bond taken in this case, were after the execution should have been returned, and it was *functus officio*, and gave no authority to the Sheriff to sell land, whatever authority he may have to sell personal property, if levied on before the return of the execution. The statute directs the mode of issuing, and the time of the return of an execution, and how land shall be sold. This must strictly be complied with. (3 Sm. & Mars. 468.) If, however, the execution had been valid at the time of the credit sale, the bond taken must have been under the provisions of the Act of 1840, which was then in force, and did not give a lien on the property of the security to the bond, until after forfeiture. The language of the Act is, " and the purchaser shall be required " to give bond with two good securities for the payment of " the purchase money; which bond shall be returned with the " execution, to the Court from which the same issued; shall be " a mortgage on the property purchased, and shall have the " force and effect of a judgment, upon which execution may " issue, without any other formality, against the principal " and securities to the same, if the same be not punctually " paid; and by virtue of this execution, the property first sold " or any other property belonging to the principal and securi- " ties, may be seized and sold for cash without appraisement." (Hart. Dig. Art. 1304.) This bond was to have the force and effect of a judgment, so far as to authorize an execution to be

sued out on its being forfeited ; but it gave no lien, only as a mortgage on the property purchased.. If the bond had been a good one, it was not forfeited until long after Waller, the security, had sold the land in controversy to those under whom the defendants claim title ; they being purchasers for a valuable consideration, held the land so purchased free from the lien claimed by the plaintiff.

The Court erred in not permitting the executions to be read in evidence, that issued in the other cases. If, however, they had been read, it could not have changed the result ; because, admitting that some of those judgments had a lien on the land sued for when obtained, yet it is very clear that those liens were lost by negligence in not seeking satisfaction with reasonable diligence. The record shows by the admission of the plaintiff, that the defendants held title and possession of the land sued for by regularly recorded deeds of conveyance from Waller, since the 21st day of May, 1840, and there was no levy on the land by any of those executions, until 14th March, 1844, and then several executions were returned by the direction of the plaintiff, then attorney for plaintiffs in execution, without any effort to have them satisfied by a sale of the land claimed in this suit ; and finally it was sold on the first Tuesday of November, 1845, under execution issued 14th October, 1845, and levied the same day on the premises sued for, and sold as stated above, and plaintiff became the purchaser. After such negligence, if a lien had ever been acquired, it was lost and could not be set up against a *bona fide* purchaser.

There is another ground on which the judgment must have been the same, for the defendants, even if all the executions had been valid, and the twelve months bonds valid ; that is, that the plaintiff's title was barred by the statute of limitation before the commencement of the suit, as the possession of the defendants and those under whom they claimed, was adverse from 21st May, 1840, and this suit was not commenced until 16th October, 1846.

We believe that although the Court erred in relation to the

executions offered in evidence, yet, that the result would have been the same, if the executions had been received, as the liens, if any acquired by any of the judgments, were lost by the want of diligence in having the liens enforced, and also that the statute of limitations would have ensured a verdict and judgment for the defendants.   We therefore do not feel authorized to disturb the judgment of the Court below, but the same is affirmed.

Judgment affirmed.