LOUISA J. WHITE ET AL. v. CELESTE PINGENOT.

Decided November 15, 1905.

[NOTE.—This case was not designated by the court as one to be reported until Volume 48 of the Texas Civil Appeals Reports was already in type. It consequently appears out of its order in point of time.—*The Reporters.*].

**Judgment Lien—Statutes of Limitation.**

Adverse possession by the vendee of a judgment debtor, under the circumstances and conditions prescribed by the three and five years statute of limitation, will destroy the lien of a judgment creditor and bar his right to recover the land under and by virtue of a foreclosure of his judgment lien and sheriff's deed to him.

Appeal from the 57 Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*F. Vandervoort, C. C. Clamp* and *Shook & Vanderhoeven,* for appellants.—Adverse possession of land for the period of time prescribed by the statute of limitations of three years (art. 3340, Rev. Stats.), when properly pleaded, will bar a suit by the owner of the title in fee simple for the recovery of the same; and, under same conditions, the owner of a judgment lien, mortgage lien, or of any other estate in such land less than fee simple will, in like manner, be barred of his suit to recover the same, whatever the form may be in which such suit is instituted.   Rev. Civ. Stats., 1895, arts. 3340, 3341, 3347, 3348, 3349; Towns v. Harris, 13 Texas, 507, 515 and 516; Armstrong v. Elliott, 20 Texas Civ. App., 46, 47 and 48; Wilcox v. National Bank, 93 Texas, 323, 332; Smith v. Uzzell, 61 Texas, 220, 222; Tennessee & P. R. Co. v. Mabry, 1 S. W., 511, 513; Evans v. Guipel, 35 S. W., 940, 941; Smith v. Montes, 11 Texas, 24, 26; City of Galveston v. Williams, 69 Texas, 448, 449; Reynolds v. Lansford, 16 Texas, 286, 294; Sparks v. Hall, 29 Texas Civ. App., 177, 181; Hill v. Harris, 64 S. W., 820, 823; Hull v. Naumberg, 1 Texas Civ. App., 132, 135; Kulp v. Kulp, 51 Kansas, 341; Trust Co. v. Kyser, 7 Texas Civ. App., 475, 480; Moore v. Brown, 27 Texas Civ. App., 208, 210; Thomson v. Weisman, 82 S. W., 503, 505; Smith v. Pate, 91 Texas, 596, 599; City of Ft. Worth v. Cetti, 85 S. W., 826, 829.

The written muniments of title need not be recorded under art. 3341, Rev. Stats., 1895.   Craig v. Cartwright, 65 Texas, 413, 422.

Where the purchaser is in possession under a complete legal title, such as a deed purporting to convey the land, he will be considered as holding adversely to all the world, including his vendor, from whom his title and possession are derived.   The entry or the holding in such case imparts no recognition of a subsisting title in another, by whose permission and in subordination to whose continuing title the purchaser entered or holds.   Nowlin v. Reynolds, 25 Grattan (Va.), 137, 144; Core v. Faupel, 24 West Virginia, 238; The Society for the Propagation of the Gospel in Foreign Parts v. The Town of Pawlet and Ozias Clarke, 4 Peters (U. S.), 480, 506; Bradstreet v. Huntington, 5 Peters, 401, 439; Osterhaut v. Shoemaker, 3 Hill (N. Y.), 563; Corwin v. Corwin, 9 Barb. (N. Y.), 219; Ketchum v. Spurlock, 34 W. Va., 597, 12 S. E., 832; Parkersburg Bank v. Neal, 28 W. Va., 744; Rev. Stats., art. 4652; White v. McGregor, 92 Texas, 556.

Adverse possession of land for the period of time prescribed by the statute of limitations of five years (art. 3342, Rev. Stats.), when properly pleaded, will bar a suit by the owner of the title in fee simple for recovery of the same; and, under same conditions, the owner of a judgment lien, mortgage lien, or of any other estate in such land less than fee simple will, in like manner, be barred of his suit to recover the same, whatever the form may be in which such suit is instituted.   Same authorities as above, also: Rev. Stats., 1895, arts. 3342, 3347, 3348; McCampbell v. Durst, 15 Texas Civ. App., 522, 529; Towns v. Harris, 13 Texas, 507, 515 and 516; Wilcox v. Bank, 93 Texas, 323, 332; Smith v. Uzzell, 61 Texas, 220, 222; Macklot v. Dubreuil (Mo.), 43 Am. Dec., 550, 559; York v.

Hutcheson, 83 S. W., 895, 897; Evans v. Guipel, 35 S. W., 940, 941; Vodrie v. Tynan, 57 S. W., 680, 681; Pendleton v. McMains, 32 Texas Civ. App., 575, 577; Hill v. Harris, 64 S. W., 820, 823; Goldfrank v. Young, 64 Texas, 432, 435; Ogle v. Hignet (Mo.), 61 S. W., 596.

*Ball & Ingrum,* for appellee.—The only object in recording an abstract of judgment is to give notice to purchasers to beware (so far as the defendant is concerned, his property would be liable under any circumstances to pay a valid judgment), and the purchaser from such judgment lien debtor occupies no better status than his vendor. Hargrove v. De Lisle, 32 Texas, 180.

A judgment lien creditor, or any other lien holder not entitled to possession of the property, has no cause of action in trespass to try title, for the recovery of the land, covered by such lien, against the purchaser from the judgment debtor or mortgagor, until after the foreclosure of, and sale under such lien. (A judgment lien may be foreclosed by issuance and sale under execution. ) Pratt v. Godwin, 61 Texas, 334; Edrington v. Newland, 57 Texas, 633; Silliman v. Gammage, 55 Texas, 369; Mann v. Falcon, 25 Texas, 276.

An abstract of judgment, when properly recorded and indexed, operates as a general lien upon all of the real estate of the judgment debtor in such county where said abstract of judgment is so recorded, subject only to prior liens or rights, legal or equitable, and the judgment creditor has the right to levy on the property to the exclusion of other adverse interest subsequent to the judgment lien, and when the levy and sale is made, the title of the purchaser at such sale relates back to the time of the recordation of the abstract of judgment so as to cut off all intermediate conveyances and encumbrances. 17 Am. & Eng. Enc. of Law (2d ed.), p. 770.

A judgment creditor has no cause of action against the judgment debtor or his vendor, in trespass to try title, immediately after the registration and indexing of an abstract of judgment, and no such cause of action would accrue until the foreclosure and sale thereunder, and then only to the purchaser at such said sale. Pratt v. Godwin, 61 Texas, 334.

Prior to the foreclosure of a judgment lien, the judgment creditor's only cause of action against the judgment debtor, or his vendor (except to set aside a sale because in fraud of creditors) would be to foreclose such judgment lien, and a suit therefor could be maintained at any time within ten years from the date of such record and index unless the plaintiff should fail to have execution issued upon his judgment within twelve months after the rendition thereof. Rev. Stats., art. 3290; Boyd v. Ghent, 95 Texas, 46; Duty v. Graham, 12 Texas, 427; Pratt v. Godwin, 61 Texas, 334.

Possession is and can only be adverse, so as to perfect title in such possessor under either the three or the five years' statute, against one who is entitled to possession; and limitation notwithstanding such possession would only become adverse, and the statute of limitation become operative and begin to run, when such party against whom it is sought to be plead becomes entitled to the possession of the prop-

erty involved. Smith v. Uzzell, 61 Texas, 222; Ketterson v. Bailey, 80 S. W., 97; Revised Statutes, art. 3349; Tyler on Ejc. and Ad. Possession, p. 881.

NEILL, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellee in the District Court of Dimmit County, on August 17, 1903, against appellants, Louisa J. White, Grey White and Jesse D. Oppenheimer, to recover 1,781½ acres of land situated in said county.

The appellants White plead not guilty and the three and five years' statutes of limitation. It is unnecessary to make further statement of the pleadings.

The venue was by consent of the parties changed to Bexar County, where the case was tried without a jury and judgment rendered in favor of appellee for all the land, save two hundred acres, which were awarded to the Whites as the homestead of Vivion.

*Conclusions of Fact.*—In view of the fact that we have concluded that a consideration of the question of limitation is alone necessary to determine the disposition of the case, we shall only state such facts as are pertinent to that issue.

1. On August 10, 1891, LaFayette Vivion, who is the common source of title, was the owner of and resided with his family on the lands in controversy. On December 28, 1894, an abstract of a judgment, recovered on April 10, 1894, in the Forty-fifth Judicial District, Bexar County, in cause No. 1850, styled Celeste Pingenot v. H. C. Tardy and L. Vivion, in favor of appellee against L. Vivion for $21,607 with interest thereon at ten percent per annum from date, was recorded in the judgment record of Dimmit County, Texas.

2. On February 28, 1896, Lafayette Vivion, joined by his wife, sold and conveyed by warranty deed of that date all the land in controversy, save survey No. 635, certificate No. 2021, F. E. Burnes, original grantee, to Louisa J. White, wife of Grey White. And on the —— day of February, 1896, they sold and conveyed by their quitclaim deed of that date to the same grantee survey No. 635, above described. These sales were made for the full value of the lands. The first deed was duly acknowledged and was filed for record in the office of the county clerk of Dimmit County on April 15, 1896, and duly recorded on the 18th of that month. The acknowledgment of the quitclaim deed was fatally defective, though it was filed for record on May 19, 1896, in the office of the county clerk of Dimmit County, and recorded on the 21st of same month.

3. The grantee, Louisa White, with her husband, Grey White, went into possession of the land described in the deed of February 28, 1896, immediately after the execution of said deed, which possession was taken under and by virtue of said instrument, and maintained open, uninterrupted, peaceable, exclusive and adverse possession by using and enjoying the same and paying all taxes due thereon, for more than five years next prior to filing this suit, the grantee claiming the land during the entire period of such possession under said duly recorded deed. Such continuous, peace-

able, adverse possession of Mrs. White and her husband was also held and maintained by them during said period under title, that is, a regular chain of transfer from and under the sovereignty of the soil down to themselves.

4. Mrs. White and her husband, Grey White, also went into possession of survey No. 635 described in the quitclaim deed from Vivion at the date of its execution and had been in peaceable and adverse possession thereof under color of title, that is to say, a consecutive chain of transfer from or under the sovereignty of the soil down to Mrs. White, it not being regular, because the deed to her being defectively acknowledged was not duly registered, for three years next prior to the time of filing this suit.

5. An execution was regularly issued out of the District Court of Bexar County on the 7th day of January, 1902, on the judgment described in the abstract of judgment referred to in the first of these findings, properly and sufficiently describing said judgment, directed to the sheriff or any constable of Dimmit County, commanding him to make the full amount of said execution out of the goods and chattels, lands and tenements of the said L. Vivion, said judgment being in full force, two executions having been previously issued thereon, the first on July 8, 1894, directed to the sheriff or any constable of Bexar County, Texas, and returned no property found, the other on November 5, 1901, directed to the sheriff or any constable of Dimmit County, Texas, and returned by plaintiff's attorney therein without having been placed in the hands of an officer for execution.

6. The execution of January 7, 1902, was placed in the hands of the sheriff of Dimmit County, Texas, on the 10th of January, 1902, and was by him levied on the property in controversy as the property of L. Vivion, defendant in said execution and judgment on which it was issued, which was all duly advertised by the sheriff for sale and was, on the first Tuesday of February, 1902, it being the fourth day of the month, sold at public vendue at the courthouse door of Dimmit County, Texas, and struck off by said sheriff at said sale to Celeste Pingenot, plaintiff in the execution as well as in this suit, he being the highest bidder, for the sum of $200. On the same day P. C. Tumlinson, as sheriff of said county, by virtue of said execution sale, made and executed a deed properly describing the property in controversy conveying the same to said Pingenot, which deed was on the same day filed for record and duly recorded in the office of the county clerk of Dimmit County, Texas.

*Conclusions of Law.*—Since the deeds from Vivion and wife to Louisa J. White are prior in time to the sheriff's deed to Pingenot, there being no question of fraud affecting the validity of the conveyance, it would be superior in law, unless the judgment on which the execution issued under which the latter deed was made by the sheriff was abstracted and the abstract recorded according to law, so as to fix a lien on the land from the date of its recordation. But if such a judgment lien attached to the land it would be unavailing if, notwithstanding such lien, the possession of appellants White

ripened into title by virtue of the three or five years' statute of limitation before appellee brought this action.

It will, therefore, under our view of the case, be unnecessary to consider the question as to whether a lien in favor of appellee was fixed on the premises in controversy by a recordance of the abstract of the judgment under which he bought the land at execution sale, and it will be assumed *pro hac vice,* that it was. Then the only question necessary for us to consider and determine is, did the statute of limitations, despite such lien, bar appellee's right of recovery?

"Every suit to be instituted to recover real estate, as against any person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterward." Art. 3340, Rev. Stats. of 1895.

"By the term 'title,' as used in the preceding article, is meant a regular chain of transfer from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of such transfer down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or being only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant or land scrip, with a chain of transfer down to him in possession." Art. 3341, Rev. Stats. of 1895.

"Every suit to be instituted to recover real estate as against any person having peaceable and adverse possession thereof, cultivating, using or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued, and not afterward; provided, that this article shall not apply to anyone in possession of land, who in the absence of this article would deraign title through a forged deed; provided further, that no one claiming under a forged deed, or deed executed under a forged power of attorney, shall be allowed the benefits of this article." Art. 3342, Rev. Stats. of 1895.

"Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." Art. 3347, Rev. Stats. of 1895.

"'Peaceable possession,' within the meaning of this chapter, is such as is continuous and not interrupted by adverse suit to recover the estate." Art. 3348, Rev. Stats. of 1895.

"'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Art. 3349, Rev. Stats. of 1895.

The only possible doubt as to the facts in this case meeting and fulfilling every condition essential to bar appellee's action and vesting in appellant, Louisa J. White, full title, preclusive of all claims to the premises, is that of adverse possession to appellee's claim by

virtue of his judgment lien. If her possession was adverse to such claim, then, under the facts established by the uncontroverted evidence, the statute, both of three and five years, bars this action as to the lands held under her first deed from Vivion, and that of three years bars it as the lands held under the second.

The lien did not arise from any contract affecting the land between appellee and Vivion, but arose from a hostile proceeding of the one against the other. It was a creature of their hostility, the child of their lawsuit, the fond nursling of the one, the repudiated bastard of the other. As it had its origin in hostility it became a lien hostile to Vivion's title to the lands which were transferred by him to Mrs. White in hostility to such claim. As to Vivion and his grantee it was a lien *in invitum,* essentially different in character from one created by contract, which may affect a third party by reason of privity with one through whose contract it originated. As is demonstrated by the principle, "that a possession and claim of land under an executory contract of purchase is not such an adverse possession as, if continued for the requisite period by the grantee or one in privity with him, will bar an entry by the grantor within the statute of limitation," which was sought to be applied by this court in the case of Runge v. Gilbough, 87 S. W., 832, which, if inaptly applied, its application is shown by cases cited in the opinion.

Where a lien upon land created *in invitum* the owner, as by a judgment, while, if in existence when he sells property affected by it to another, continues to exist and the property in the hands of the vendee subject to it, if no other title supervene, as long as such lien exist, yet the possession of such vendee is not held in subordination but antagonistic to such lien. And being so held for the requisite period ripens, *per force* of the statute of limitation, into an adverse title precluding all claims, including such lien. This title by limitation, thus supervening, frees the land of such lien. For the title of the judgment debtor has been extinguished, not by his deed, so far as the lien is concerned, but by virtue of the statute of limitations which has vested in another a title separate, distinct and independent from that once held by the judgment debtor and with which the owner under the newly acquired title is no longer in privity. Burton v. Carroll, 96 Texas, 320.

This does not contravene the statute which provides that when a judgment "lien has been acquired . . . it shall continue for ten years from the date of such record and index, unless the plaintiff shall fail to have execution issued upon his judgment within twelve months after the rendition thereof." (Art. 3290, Rev. Stats.) For when limitations has extinguished the defendant's title, it is as though it had never been, and such judgment can only operate as a lien upon real estate of the defendant in the judgment. But it nevertheless does operate as a lien upon all the real estate of the defendant situated in the county where the record and index of the judgment were made, and upon all real estate which the defendant may thereafter acquire situated in said county; and will continue to operate as such lien for *ten years* from the date of such record and index.

To illustrate, had Vivion's grantee, Louisa J. White, never taken possession of the land, or, having taken possession, had failed either to continue in possession the required statutory period, or perform such acts as were essential to vest title by virtue of the statute of limitation, the judgment would have continued to operate as a lien upon the land until sold under execution, when it would have merged in the sheriff's deed to appellee, and vested in him all the title Vivion had in the lands at the time the abstract of the judgment was recorded and indexed in Dimmit County; or, had there been no sale under the judgment, it would have operated as a lien on the lands for ten years from the date of the recordation and indexing the judgment. It was only when Mrs. White acquired a separate and independent title, by virtue of the statute of limitation, from that of Vivion, and from such acquisition, ceased to hold under his title or in privity with him, that the judgment ceased to operate as a lien upon the lands. If, after having acquired such independent title, she and her husband had, at any time within ten years from the date of recording and indexing the judgment, conveyed the lands to Vivion, the lien would have again attached by operation of the statute, just as it would to any other lands Vivion might have acquired after the abstract was recorded and indexed.

Under this construction the statute relating to judgment liens is consistent with that of limitation, both stand together, operate in perfect harmony and without a jar, and each serves the purpose of its enactment. The construction contended for by appellee would bring them in conflict and in some cases defeat the purpose of one or the other. For if the insistence of appellee as to the construction of the statute relating to judgment liens should prevail, then the statute of limitation of actions for land might be suspended and inoperative as to all lands affected by a judgment during the entire period of time such lien could exist, which might be ten years. Though all the conditions, which otherwise would bar a right of action and give to him who performed them full title precluding all claims, might concur during the entire statutory period, the statute of limitations would be nugatory, thus enabling one who has such a lien, by his failure to foreclose it, to play the "dog in the manger" and defeat the purpose of a statute grounded on the soundest public policy.

The insistence of appellee "that the purchaser of land charged with a judgment lien from the judgment debtor, occupies no better position than his vendor," is, without more, ordinarily, a sound proposition of law. But it is applicable only in cases where nothing has supervened to make the attitude of the vendee different from that of his vendor at the time of the sale. But where the vendor is not in actual possession cultivating, using or enjoying, etc., and his vendee takes immediate possession of the land under his deed and commences cultivating, using and enjoying the same, then his attitude is different from that of the vendor at the time of the sale, and we apprehend that he does not occupy the same relation to the judgment creditor that his vendor did. But suppose the judgment debtor at the time of the sale was in possession cultivating, using

and enjoying the premises, it by no means follows that because his vendee, who entered upon the land and continued to cultivate or enjoy, use, etc., occupies no better position than his vendor, that such possession could not, through the statute of limitations, ripen into title preclusive of the judgment creditor's claim of a judgment lien. Might it not be that the continued possession, occupation, cultivation, etc., by the judgment debtor would have effected the same result? It is true that this would, ordinarily, avail him nothing; for as long as he owned the land, regardless of whether the claim of lien by his judgment creditor was barred or not, it would, if not exempt, be subject to execution issued on the judgment, provided it had not become dormant or itself not barred by the statute of limitation. That the statute of limitations might run, even in favor of the judgment debtor, would seem to be the logical effect of the decisions in the following cases: Pendleton v. McMains, 75 S. W., 349; Thompson v. Weisman, 82 S. W., 503; City of Fort Worth v. Cetti, 85 S. W., 827; Logan v. Robertson, 83 S. W., 395; Cobb v. Robertson, 86 S. W., 747.

In the second case just cited it is said by the Supreme Court: "In the case of Pendleton v. McMains, 75 S. W., 349, the Court of Civil Appeals of the Fourth District held the contrary doctrine. Judge Fly, for the court, said: 'More than thirteen years had elapsed after the rendition of the judgment before this suit was instituted, and during all those years defendants in error had been in possession of the land and claiming title to it against the world. There is no peculiar sacredness in a title to land obtained through a judgment that lifts it out of the scope and purview of statutes of limitations and, if the possession be adverse for ten years, whether it be by the defendant in the judgment or anyone else, it will perfect a title.' Application for writ of error was made in that case to this court, and was denied. The point at issue was presented by the application. This court has held that a vendor, by executed conveyance, who remains in possession of the land, claiming it as his own, without notice other than possession, may acquire against his vendee a title by limitation." If a defendant against whom judgment has been rendered for the recovery of land in his possession can, *non obstante,* by remaining in possession for the requisite period acquire title by limitation as against the plaintiff in the judgment, no reason is perceived why a defendant in a judgment for money can not in like manner acquire title to land as against a lien fixed upon it by virtue of such judgment. A judgment for the land itself certainly has as much force as a judgment lien upon it could have. And if title by limitation can be acquired by one defendant in defiance of the judgment, it would seem it could likewise be acquired by the other despite the judgment lien.

Again, it is contended by the appellee that a judgment creditor has no cause of action against the judgment debtor or his vendee by reason of the registration and indexing the judgment, and that no right of action would accrue until foreclosure and sale thereunder, and then it would only accrue to the purchaser at such sale.

What we have said before anticipates and virtually settles this contention adversely to appellee.

We will now cite and to some extent discuss other authorities by which we were controlled in reaching the conclusion that the cause of action of a judgment lienor accrues against the vendee of his judgment debtor as soon as such vendee takes possession of the land by virtue of his deed, and that if suit be not instituted to recover the land before the lapse of time within which it is required to be brought, such action will be barred.

The case of Towns v. Harris, 13 Texas, 507, was an action of trespass to try title, brought October 16, 1846, by Towns against Samuel Harris and others. It was proved that Edwin Waller owned and possessed the land in controversy from December 17, 1836, to May 21, 1840, when he sold it to Mosely Hooker, who, on the same day, conveyed it in trust to John W. Harris and E. M. Pease to secure certain notes due Waller. The notes and deed of trust were transferred to Samuel Harris, one of the defendants, in July, 1841, after which time Waller had no interest in the notes and deed of trust. On January 17, 1844, the trustees sold the premises under the trust deed and Samuel Harris became the purchaser at such sale. Hooker owned, possessed and paid taxes on the land from May 21, 1840, the date of sale by Waller to him, until January 17, 1844, when it was, as stated, sold by the trustees to Harris. From that time up to the trial Harris owned, possessed and paid taxes on the land. All the deeds of conveyance were duly recorded in the county where the premises were situated. On March 18, 1840, John R. Oakley recovered a judgment for a large sum of money against Edwin Waller in the District Court of Brazoria County, with a stay of execution for one year less one day, upon which a number of executions were issued, the first on March 17, 1841, and the tenth on October 14, 1845. The plaintiff, Towns, claimed title to the premises under a sale made by the sheriff of Brazoria County on November 5, 1845, by virtue of an execution issued on said judgment. The defendants plead not guilty and the statutes of limitations of three and five years. By article 1621, Hartley's Digest, it was provided that a final judgment of the Supreme, District or County Court should "operate as a lien on all the property of the defendant, situated and being in the same county where judgment is rendered, from the day of the date of the judgment." The five years' statute of limitation then in force was, so far as applicable to that case and the one under consideration, the same as now. Hart. Dig., arts. 2391, 2392. The Supreme Court, after discussing questions relating to the validity of the execution and the bond given to stay the execution for twelve months, in an opinion by Justice Lipscomb, said: "There is another ground on which the judgment must have been the same for the defendants, even if all the executions had been valid, and the twelve months' bond valid, that is, the plaintiff's title was barred by the statute of limitation before the commencement of the suit, as the possession of the defendants and those under whom they claimed, was adverse from 21st of May, 1840, and this suit was not commenced until 16th of October, 1846. We believe that al-

though the court erred in relation to the executions offered in evidence, yet, that the result would have been the same if the executions had been received, as the liens, if any acquired by the judgment, were lost by the want of diligence to have the liens enforced, and also that the statute of limitations would have insured a verdict and judgment for the defendants."

If, as contended by appellee in the present case, the statute did not commence to run and no right of action accrued to plaintiff until he bought under the judgment, it could not have been held by the Supreme Court that Towns' action was barred, for he never bought until November 5, 1845, and he instituted his suit on October 16, 1846, lacking a few days of a year after his purchase. Yet, according to the opinion, though he had only a judgment lien, the statute commenced to run from May 21, 1840, when Edwin Waller, the judgment debtor, sold the premises to Mosely Hooker, who then went into possession, which was, under the decision, adverse to the lien or claim of Oakley, the judgment creditor.

In the case of Hull v. Naumberg, 1 Texas Civ. App., 135, it was held, upon the principle "that a creditor having a judgment lien against the real estate of a debtor may maintain a suit to assert such lien against his debtor and another to whom the property has been fraudulently conveyed, without in the first instance procuring execution and levy," that an action could be maintained by the judgment creditor who has a lien on the land without resorting to execution and levy to cancel a fraudulent homestead claim set up by the debtor, and enforce the judgment lien against the real estate so claimed as exempt.

From this and the cases cited in the opinion it would seem that the appellee in this case, having a judgment lien on the land in controversy, could, at the moment Mrs. White bought it from Vivion, have instituted suit against her, based upon his lien, to cancel her deed and subject the land to his judgment lien. This remedy would have been as effectual as a suit of trespass to try title brought after sale of the land under execution.

But it seems to be a principle well established that where preliminary steps are essential to the bringing an action upon a claim, and such steps may be taken by the claimant, he can not prevent the operation of the statute of limitations by unnecessary delay in taking such action, and if he fails to act within a reasonable time the statutory limitation will run. (Kulp v. Kulp, 51 Kan., 341, 32 Pac., 1118, 21 L. R. A., 550, and cases cited.) There was not in all the time it is claimed limitations was running in favor of appellants, a single month that appellee could not have had the land sold under execution issued on his judgment, bought it in and have brought suit against them and recovered the land. If these were necessary preliminary steps to bringing his action, his failure to take them within a reasonable time, under the principle announced, barred his right of recovery.

In view of the undisputed facts and the principles of law enunciated, the trial court should have rendered judgment for defendants,

and it now becomes our duty to reverse its judgment and render such judgment here.

It is therefore considered, ordered and adjudged by the court that the plaintiff, Celeste Pingenot, take nothing by his suit and that the defendants go hence without delay.

*Reversed and rendered.*

Writ of error refused.