LAFFERTY v. WILSON.

(Court of Civil Appeals of Texas. El Paso. Dec. 18, 1913.)

1. APPEAL AND ERROR (§ 934*)—PRESUMPTIONS —MATTERS ADJUDICATED.

In trespass to try title, where the liability of plaintiff to return the purchase money paid by defendant under a void sheriff's deed was not called to the attention of the court during the trial, and where no charge on the question was requested by defendant, it must be presumed on appeal that the right to the return of the money was not adjudicated below because not presented.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

2. TRESPASS TO TRY TITLE (§ 4*)—CONDITION PRECEDENT—RETURN OF CONSIDERATION FOR VOID DEED TO DEFENDANT.

It is a condition precedent to the recovery of land that money paid by defendant as a consideration for a former void deed be returned.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 4; Dec. Dig. § 4.*]

3. JUDGMENT (§ 617*)—RES JUDICATA—MATTERS NOT PRESENTED.

Where the right to a recovery of money paid as a consideration for a void deed is not adjudicated in an action of trespass to try title, the party entitled to such return may maintain a subsequent action therefor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1130, 1134; Dec. Dig. § 617.*]

4. JUDGMENT (§ 250*)—GROUNDS OF REVIEW —WAIVER.

Defendant in trespass to try title, who did not urge his claim to a return of money paid for a void sheriff's deed through which he claimed during the trial, thereby waived his right to recover in such action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 436; Dec. Dig. § 250.*]

5. TRIAL (§ 229*)—INSTRUCTIONS—BURDEN OF PROOF—REPETITION.

In trespass to try title, where defendant set up a void sheriff's deed and a claim upon the ground of equitable estoppel, a charge, that his title rested upon the void deed and a charge on estoppel consisting of six paragraphs and containing a repetition as to what constituted an estoppel and as to the burden of proof required of defendant, as a whole, was not a proper presentation of the law of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 513; Dec. Dig. § 229.*]

6. TRESPASS TO TRY TITLE (§ 45*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Evidence in trespass to try title held not sufficient to raise the question of a presumed deed in defendant's chain of title to such degree of certainty as to require its submission to the jury.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

Error to District Court, Harris County; Norman G. Kittrell, Judge.

Trespass to try title by H. T. D. Wilson against J. Edgar Lafferty. Judgment for

---

plaintiff, and defendant brings error. Reversed and remanded for new trial.

Tharp & Tharp, of Houston, for plaintiff in error. Atkinson & Atkinson and Harry Holmes, all of Houston, for defendant in error.

HARPER, C. J. This is a suit in trespass to try title, filed by H. T. D. Wilson against J. Edgar Lafferty on April 10, 1910, for the following tract of land in Harris county, Tex.: Ten acres out of lot No. 8 of the subdivision of the Harris and Wilson two-league grant on the north side of Buffalo bayou, west corner of the Gagne tract of land in said lot 8; thence north 660 feet to corner; thence east 660 feet to corner; thence south 660 feet to corner on the north line of the Gagne tract; thence west 660 feet to the place of beginning. The defendant pleaded as follows: (1) Not guilty. (2) Three, five, and ten years' statute of limitations. The case was tried before jury and judgment rendered in favor of plaintiffs, from which judgment it comes to us upon writ of error.

The record discloses that the parties claim the land in controversy, as follows:

Plaintiff's title, as follows: First. Title from Mexican government to Wm. P. Harris and Robert Wilson two leagues of land, dated June 13, 1832. Second. It was admitted that H. T. D. Wilson is a grandson of Robert Wilson. That Robert Wilson had a son, James K. Wilson, and a son, J. T. D. Wilson. Third. Quitclaim deed from James K. Wilson to James T. D. Wilson, conveying his interest in land in Harris county, dated January 4, 1890. Fourth. In matter of the estate of James T. D. Wilson, deceased, showing that he died November 23, 1902, leaving a will which was probated. That after special bequests, he gave to H. T. D. Wilson and Hubert S. H. Wilson all other property which he might own or be entitled to at his death. Fifth. Deed from executors of Jas. T. D. Wilson to H. T. D. Wilson conveying all property belonging to said estate, dated July 16, 1909. Sixth. Deed from H. S. H. Wilson to H. T. D. Wilson, conveying all his right and title in all property belonging to estate of James T. D. Wilson, deceased, dated July 16, 1909.

Note: The foregoing constitutes plaintiff's chain of title to the Robert Wilson one-half of the land. As to the W. P. Harris one-half interest, plaintiff introduced the following: First. It was admitted that Glen M. Harris is sole heir of Wm. P. Harris. Second. Quitclaim deed from Glen M. Harris to H. T. D. Wilson, dated September 30, 1910, conveying his right, title, and interest in lots 7, 8, 9, and 10, second tier of Harris and Wilson two leagues, for the consideration of $100.

Defendant's chain of title: First. Original grant to Wm. P. Harris and Robert Wilson. Second. Judgment in cause No. 55, entitled Andrew Briscoe v. Joseph Evans, dated June 10, 1839, rendered in Eleventh district court for $600. Execution docket shows: Execution on said judgment issued June 29, 1839, bearing the following return: "Levied and sold on twelve months' credit, due 13th of December, 1840." Third. All papers in case are lost, and after diligent search by the clerk cannot be found. Fourth. Sheriff's deed, dated January 5, 1841, recorded in Deed Records, vol. G, p. 541, filed March 5, 1842, at 4 p. m., from Robert Wilson, by sheriff, to D. W. C. Harris, the same being as follows: (Deed omitted.) Fifth. William P. Harris died, and his widow, Caroline E. M. Harris, appointed and qualified administratrix, in 1844. Inventory shows: One-half of the unsold portion of two leagues granted to Harris and Wilson, one-half of 8,000 acres. Petition of Caroline E. M. Harris for partition of lots 7, 8, 9, and 10 in second tier of lots, between the estate of Wm. P. Harris and Birdsall and Harris. Decree ordering partition. Sixth. Partition deed dated February 8, 1845, between Caroline E. M. Harris, M. L. Birdsall, and D. W. C. Harris, in which D. W. C. Harris received lot 8 of the Harris and Wilson survey. Seventh. Deed from D. W. C. Harris to Thos. T. Hailey, dated June 15, 1854, conveying 297½ acres, being lot 8. Eighth. Deed from Thos. T. Hailey to Wm. Chapman, dated July 14, 1860, 53 acres out of lot 8, fronting on Gagne's north line. Ninth. Deed from Wm. Chapman to W. H. Stanfield, dated September 7, 1863, conveying the ten acres in question. Tenth. Deed from W. H. Stanfield to E. J. Hanberry, dated October 4, 1863, conveying the ten acres in question; also described as lot 4 of Hailey's subdivision. Eleventh. Deed from the heirs of E. J. Hanberry to Mary E. Scott, dated 1898, conveying the land in question. Twelfth. Deed from W. J. Hailey and Rebecca Hailey to Mary E. Scott, conveying the ten acres in question, dated May 30, 1908. Thirteenth. Deed from Mary E. Scott and husband, Wm. E. Scott, to J. Edgar Lafferty, conveying the land in controversy. Dated February 23, 1909.

Defendant further claims title under equitable estoppel and presumed deed. He also asserts that the plaintiff cannot recover without first returning the money paid as consideration for the void sheriff's deed above described, which shall be discussed in passing upon appellant's assignments of error.

The appellant charges that the court erred in charging the jury that: "The title of the defendant rests upon a certain sheriff's deed made under execution in 1839. Under the law that deed is void, and the parties through whom defendant claims got no title thereby, and therefore you will not consider the same"—because such charge was erroneous for the reason that plaintiff could not recover without having paid back the pur-

chase money paid for the land under said execution sale, or offered to do so as a condition precedent to his recovery.

[1] It is nowhere disclosed by the record that this proposition of return of the money was raised during the trial of the cause, but was called to the attention of the trial court for the first time in the motion for a new trial. There being no evidence that the money mentioned in the deed was in fact paid, unless the recital in the deed is evidence, and no charge upon the question and none asked by the defendant, it will be presumed that the right to have the money returned was not adjudicated by the trial court because not presented.

[2-4] It is a condition precedent to a recovery of title to land that money paid as a consideration for a former void deed be returned, but like every other right it must be proven: And the law is that, if such question is not adjudicated in the case where the right of property is adjudicated, then the party entitled to such money may maintain a subsequent action therefor. So, in this case, the defendant has waived his right to recover in this action by not urging his claim at the proper time and place. Johnson v. Caldwell, 38 Tex. 218; Towns v. Harris, 13 Tex. 507.

Appellant urges that the sheriff's deed referred to in the charge complained of in this assignment only affects the title to an undivided half interest in the land and was therefore prejudicial to the defendant. We find that, from the record, as a whole, it is conceded that the sheriff's deed referred to in this charge is void. It shows that only a half interest in the original survey was meant to be conveyed (the Robert Wilson half interest). The widow of William P. Harris, Caroline E. M. Harris, presumably recognizing the rights of D. W. C. Harris, through the sheriff's deed, joined in a partition deed February 8, 1845, in which said Harris received lot 8, or the land in controversy. But if he received no title by virtue of the void sheriff's deed he could receive none from Mrs. Caroline E. M. Harris by virtue of the partition deed because it was a nullity. Therefore defendant, Lafferty, could get no more title than said Harris got. And if this had been the only claim urged by defendant below, the court should have instructed a verdict for the plaintiff.

[5] The seventh, eighth, and ninth assignments are grouped, and urge that the court's charge is too favorable to plaintiff to the injury of the defendant upon the question of equitable estoppel. Save the first two paragraphs, the court's charge is devoted to the question of estoppel: "Paragraph 3. The case is submitted to you solely upon what is termed a question of 'estoppel.' By 'estoppel' is meant that a party does or says that which induces another party to act and to change his position for the worse, and which he would not have done but for such statement or action. Paragraph 4. In order that 'estoppel' shall arise so as to prevent the assertion of one party of a right against another party who claims the benefit of the 'estoppel,' it is necessary that there should be a clear understanding and a meeting of the minds of the two parties concerning the question at issue between them. Paragraph 5. What the facts were is for you to say, you being the sole and exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses. The law you will receive in this charge and be governed thereby, reading the same in your retirement, and, by applying the law as herein given to the facts as you find them to be, make up your verdict. Paragraph 6. The burden of proof is on the defendant, Lafferty, to prove by a preponderance of the evidence the 'estoppel' with that measure of clearness and certainty which you are instructed herein the law requires. Paragraph 7. If you believe that the very land in controversy was pointed out on an accurate map by E. W. Scott to H. T. D. Wilson, and that Wilson told Scott that he had no claim to the land in controversy, then you will find that, as to Scott, Wilson was estopped, and, if you so find the facts to have been, you will find for defendant. Paragraph 8. On the other hand, if you find that there was not a clear understanding between Scott and Wilson as to what land Scott was inquiring about, and that there was an uncertainty as to what land the inquiry was being made about, and believe that Wilson told Scott that he claimed nothing north of the Miles and Franklin division line, which begins at the intersection of the two railroads on the map, then Wilson, the plaintiff, was not estopped by the statements made to Scott, and, if you so find the facts to have been, you will find for plaintiff."

The sixth paragraph of the court's charge is assigned as error "because said charge mistakes the law and requires the jury to not allow defendant the benefit of estoppel unless he proves the same by a preponderance of the evidence, and with that measure of clearness and certainty, etc." This charge was sought to be corrected by the defendant by a special charge requested, which is substantially correct, but which was refused by the court. These errors in the court's charge are urged by three assignments, which are grouped, but which are propositions in themselves, and are followed by the proposition that the court's general charge was too favorable to plaintiff to the injury of the defendant.

The court should have given a clear statement of the law of estoppel, in one or more paragraphs, and then in one paragraph naming the things necessary to be proven by appellant by the preponderance of the evidence, that is, grouping the facts thereunder, it will be seen that the charge as given is a

repetition as to what constitutes an estoppel, and a repetition as to the burden of proof required of the defendant; and taken in connection with the two first paragraphs, charging that "the defendant's title rested upon the void sheriff's deed," it cannot be said that the charge as a whole was a proper presentation of the law of the case; therefore the assignments are sustained.

The eleventh assignment complains that the court erred in not submitting the issue as to whether the land in question lies north of the railroad. While this assignment was not properly raised by requesting charge to the jury upon the proposition, in view of another trial the assignment is considered with observation that the evidence is sufficient to raise the issue of fact, especially in connection with the question of estoppel relied upon by defendant.

[6] The tenth assignment complains that the court erred in not charging and refusing the defendant's special charge requested upon the issue that under the facts and circumstances of this case it will be presumed that a deed was executed by Robert Wilson to D. W. C. Harris. The appellant relied upon the following facts and circumstances to support his proposition:

First, defendant's chain of title (the many transfers thereunder).

Testimony of H. T. D. Wilson: "Robert Wilson was my grandfather. He died in 1857 or 1858 in Harris county. I am not positive whether it was 1857 or 1858, but it was about the time I was born. He lived in Harris county before this land was granted to Harris and Wilson, and nearly all the time from that time up to the time of his death. My father was born in St. Louis. He came to Texas in 1835 or 1836. He lived here from that time until his death, most of the time; this was not his home always. He lived in Panama and South America for two or three years; other than that his home was in Harris county. He died in November, 1902. I lived five years in Los Angeles and San Francisco, and all the rest of my life I have been living here. I was born in February, 1858."

Mr. Lafferty testified: "I bought this land from Mary E. and Wm. E. Scott. When I purchased, I went out and looked it over. It was fenced and was located like city lots, Mr. Gagne's lines were all fenced up, and they were old fences. Mr. Abbott gave me an opinion that it was a good, merchantable title. At the time I bought the land, there was a suit pending against it for taxes, and I paid off the suit. I have paid the taxes and assessed it ever since then, and have paid the taxes on it. I paid $1,100 for the land to Mrs. Scott."

"Defendant read in evidence certificate from comptroller's office, showing payment by the Haileys of taxes from 1858 to 1864.

"Defendant introduced the map of Hailey's addition, recorded September 17, 1868, in volume 6, on page 439, Deed Records of Harris County, in which the land in controversy is lot No. 4, marked 'Stanfield 10 acres,' and it lies immediately north of the Gagne tract."

The court did not err in refusing the charge because the evidence is not sufficient to raise the question to such degree of certainty as to require its submission to the jury. Masterson v. Harrington, 145 S. W. 626.

Because of the defects in the charge of the court above pointed out, the cause is reversed and remanded for a new trial.