HOWARD KEYES ET AL. v. THE HOUSTON AND GREAT NORTHERN RAILROAD CO.

1. CONTINUANCE.—When a second application for continuance has been overruled, and the record shows that before defendant closed his testimony the witness for whose testimony the continuance was made appeared in court and was not examined, it will be presumed

that the testimony was not material, and the action of the court on such application will not be revised.

2. PURCHASE BY PLAINTIFF OF OUTSTANDING TITLE.—In an action of trespass to try title, plaintiff, pending the suit, may buy from heirs of a party whose undivided interest plaintiff had claimed through a defective administration sale, and such purchase would meet the plea of outstanding title to such interest, if it could be made in such case.

3. LEGAL TITLE AS AGAINST THE EQUITY.—The issuance of patent to the heirs of the original grantee of a certificate, the grantee having parted with all interest therein, confers but the bare naked legal title, which cannot be asserted by such heirs or their vendee with notice against parties holding by purchase of the certificate.

APPEAL from Wood.   Tried below before the Hon. M. H. Bonner.

This is a fact case.   The opinion sets out enough to be understood.   A synopsis even of the various items of testimony forming the title claimed by the respective parties would take many pages.

The motion for continuance overruled was a second application.

*J. H. Herndon,* for appellant.

*Jones & Henry,* for appellee.

MOORE, CHIEF JUSTICE.—This is a suit of trespass to try title, brought by the Houston and Great Northern Railroad Company against appellees, Howard Keyes and others, for two tracts or parcels of land adjoining each other, and together amounting to three hundred and thirty-three and one-third acres, a part of a survey of some fourteen hundred and odd acres made by virtue of a certificate for a league and labor of land granted by the board of land commissioners of Nacogdoches county on the 1st of February, 1838, to Joseph E. White.

This case was brought by appeal to this court before the adoption of the rules prescribing the manner in which tran-

scripts are to be prepared, and the points relied upon for reversal should be presented to the court. If an illustration were needed to demonstrate the necessity for a radical change in the previous practice in these respects, the present record, the assignment of errors, and the brief of appellant's counsel might be aptly referred to for this purpose. The pleadings are voluminous. Repeated amendments are made by both plaintiff and defendant. The statement of facts alone fills two hundred and twenty-one pages of the transcript. Fifteen distinct bills of exception were taken by appellant to rulings made by the court during the progress of the trial. These bills generally present from three to eight distinct points upon which the action of the court is invoked. While there are only six assignments of error, only one of them points out and definitely indicates the error complained of. The others, however, are sufficiently general and comprehensive in their terms to embrace every conceivable matter or thing done in the court below, from the filing of the original peti-tion to the perfecting of the appeal to this court, on account of which appellant can even plausibly claim a reversal of the judgment; and the brief of appellant's counsel is scarcely more definite than his assignment of errors. It is, as he says, "in the nature more of a continued statement of lead-ing facts"—some of which, however, are by no means accu-rately stated—than of a discussion of the points of law pre-sented by the record; nor are we cited to a single authority in support of its assertions and conclusions.

In view of the manner in which the case comes into this court and has been presented by counsel, we cannot be ex-pected to give it further consideration than may be essential to its proper determination; and this we will attempt to do as briefly as possible.

The overruling of appellant's application for a continuance is certainly no sufficient ground for a reversal of the judg-ment. It might, as we think, be well questioned whether Keyes, who alone applied for the continuance, had any inter-

est in the case after having been adjudged a bankrupt and
his assignee becoming a party to the action.   But as he
seems to have been recognized by the court as still a party,
and no objection thereto in the court below or in this court
has been made by appellee, it is unnecessary for us to ex-
press any definite opinion in respect to it, or put our deter-
mination of the point on this ground.   No proper diligence
is shown to have been used to procure the evidence of Able
and Bagley; the other absent witness, bringing with him the
depositions of Camp and Webster Flanagan, was in court
before the plaintiff had closed his case.   Yet appellant neither
read the depositions nor examined the witness.   This fact
conclusively demonstrates that the testimony of neither of
these witnesses could have been of any material service to
him.

Joseph E. White, the grantee of the certificate, a few days
after obtaining it, sold fourteen hundred and seventy-six acres
of it to John F. Graham.   This portion of it was a short
time afterwards located in what is now Harrison county,
and, as seems to be admitted on all hands, is in no way in-
volved in this controversy.   No further reference will, there-
fore, be made to it.   The question upon which the correct-
ness of the judgment evidently hinges, is whether White sold
the remaining portion of the certificate, or was the owner of
it, or any part thereof, at his death.   For, certainly, if he
sold the whole certificate he had no equitable title to the
land upon which it was located.

It seems to us to have been as fully and clearly shown by
the evidence of appellee as could be reasonably done, in
regard to transactions of this character, after the lapse of so
many years, that White had alienated the entire certificate
long prior to his death.   On the 21st of February, 1838, he
sold to Alexander Jordan an undivided interest of fourteen
hundred and seventy-six acres of the certificate.   A year or
two afterwards he sold to Dymer W. Reeves twelve hundred
and ninety-nine acres of it; and on the 8th of January,

1841, he sold to Pleasant H. Pearson three hundred and fifty-four acres, that being, as shown in the recitals in his bond to Pearson, all of his then remaining interest in it.

The certificate is shown to have been delivered to Jordan at the date of the sale to him, and was never afterwards in the custody, or directly subject to the control, of White, but was held and claimed by the purchasers from him, or one or the other of them, and parties claiming under them, as their property, until its subsequent location and survey upon the land now in controversy, and the survey had been returned to the general land office by Ursury.

But it is insisted by appellant that the title to the certificate, or any part of it, never legally vested in either Jordan, Reeves, or Pearson, because, as he says, neither of the bonds given these parties recites the payment of any consideration. This, evidently, is a mistake, in respect to the bond to Pearson; and, whether the payment of a consideration is acknowledged in the bonds or not, it is otherwise abundantly shown by the evidence. If it had not been, the facts were amply sufficient to warrant the court in presuming its payment.

It is also insisted by appellant that the court erred in admitting evidence offered by appellee to prove the several links in its chain of title. The bond to Jordan seems to have been produced on the trial. It had been duly recorded in the county in which the land was situate, on the acknowledgment of its execution, by White himself. It was more than thirty years old; and as it seems to have come from the proper custody, and is, as far as can be seen from the record, free from blemish or suspicion, it might have been admitted without proof of its execution as an ancient instrument. The other deeds were shown to have been lost. Secondary evidence was properly admissible to prove their existence and contents. Even without the bonds, the parol evidence was sufficient to prove the sales to Reeves and Pearson. There were, no doubt, great informalities and irregularities exhibited in the administration of Jordan's

and Reeves' estates; but it was shown that application was made by the administrators for the sale of the certificate, and that orders of sale were made and entered upon the minutes. Reports of sale were properly returned, and certainly, as regards the sale of so much of the certificate as belonged to the estate of Jordan, the sale was ratified and approved by the court. By the administrator's deed Flanagan got a valid title, which could not be questioned by a stranger in a collateral proceeding.

The sale of the interest owned by the estate of Reeves, though properly reported by the administrator and approved by the indorsement by the judge of his approval on the administrator's report of sale, does not appear to have been approved by the court. But, admitting that the title of the estate was not thereby divested, the release or conveyance of their interest by Reeves' heirs, though made after the institution of the suit, is a valid answer to the plea of outstanding title in these heirs, if the defendants would have been permitted to make such a defense; and when Flanagan paid the judgment which Pearson recovered of him for the conversion of his portion of the certificate he was estopped from denying the validity of Flanagan's sale to Ursury, and, of course, no one else could do so. It is manifest, therefore, that, at the date of his location and survey of the land in controversy, Ursury was the owner of the entire certificate, unless it was the twelve hundred and ninety-nine acres conveyed to Reeves. And admit, for argument, that the location inured to the owners of the entire certificate, and not to the party by whom the location is made: of what avail is it to appellant? The land, when located, certainly belongs to the owners of the certificate; if not, then to that one of them by whom it has been located, if the quantity located does not exceed his interest in it. Before the date of the issuance of the patent the heirs of White had neither a legal nor an equitable title to the land; and if by the patent they got the legal title, and it did not pass by estoppel or operation of

law to the owners of the certificate, they got merely the bare naked legal title, without any beneficial interest whatever in the land. As appellant was unquestionably chargeable with notice of appellee's title when he purchased from White's heirs, he occupies no better position than that in which they stood, although he may have paid them the full value of the land.

There being no error in the judgment of which appellant can complain, it is affirmed.

AFFIRMED.

[Justice BONNER did not sit in this case.]