**WILSON v. BECK et al. (No. 9530.)\***

(Court of Civil Appeals of Texas. Dallas. May 1, 1926. Rehearing Denied June 19, 1926.)

**1. Husband and wife ⬅️265.**

Wife *held* to have equitable title to undivided one-half interest in community homestead property, legal title to which was in insane husband.

**2. Descent and distribution ⬅️68.**

Children *held* to have mere expectancy in community homestead property while parents lived.

**3. Assignments ⬅️8.**

Heir apparent may make valid sale of expectancy.

**4. Partition ⬅️70—Married woman may make valid partition of land even by parol.**

Married woman may make valid partition of land even by parol, since partition between joint owners or tenants in common is within neither statute of frauds nor statute regulating conveyance of land by married women.

**5. Frauds, statute of ⬅️68—Husband and wife ⬅️70.**

Partition of land between joint owners or tenants in common is not "conveyance" within statute of frauds or statute regulating conveyance of land by married women.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conveyance.]

**6. Partition ⬅️5.**

Parol "partition" is a division, not a conveyance, of land, and vests equitable title of respective shares in tenants in common to whom allotments are made; the legal title remaining as before.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partition.]

**7. Partition ⬅️2.**

Partition in anticipation of inheritance is valid.

**8. Husband and wife ⬅️198.**

Purchaser of land executing vendor's lien notes and purchaser of these notes *held* presumed to have contracted on basis of recitals in deeds of wife and children of owner that wife was feme sole.

**9. Estoppel ⬅️22(2)—Where purchaser executing vendor's lien notes and purchaser of notes contracted on basis of recitals in partition deeds of wife and children and deed of wife to purchaser that wife was feme sole, held wife and children are estopped to gainsay recitals whether innocent or fraudulent.**

Where wife and children partitioned land of husband and father, whom they believed dead, and enjoyed allotments for many years, and purchaser of land executing vendor's lien notes and purchaser of notes contracted on basis of recitals in partition deeds of wife and children and of deed of wife to purchaser that wife was feme sole, *held* both wife and children are estopped to gainsay these recitals whether innocently or fraudulently made.

**10. Husband and wife ⬅️198.**

Wife who assumes status as feme sole, and with whom parties contracted with reference to that status, cannot repudiate transactions to injury of persons misled.

**11. Deeds ⬅️5.**

"Deed" is an instrument in writing duly executed and delivered conveying real estate, as distinguished from a quitclaim.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deed.]

**12. Estoppel ⬅️39—Deed need not contain covenants of warranty to create estoppel to assert interests subsequently acquired.**

Deed need not contain covenants of warranty, for estoppel to assert interests subsequently acquired to arise.

**13. Estoppel ⬅️50.**

If grantor is estopped to dispute title of grantee, any title or right subsequently acquired by grantor immediately passes to grantee.

**14. Estoppel ⬅️22(2)—Partition of land, community homestead property, between wife and children, and false recitals in partition deeds and in deed to purchaser from wife that wife was feme sole, held to estop wife and children to dispute title acquired under purchaser.**

Partition of land which was homestead and community property between wife and two children, and acceptance by each of land allotted, and false recitals in partition deeds, and in deed from wife to purchaser that wife was feme sole; *held* to estop wife and children to dispute title acquired through purchaser in reliance on truth of recitals.

**15. Estoppel ⬅️50—Where wife and children were estopped to dispute title to homestead and community property, title or right to convey subsequently acquired passed immediately to purchaser.**

Where wife and children were estopped to dispute title of purchaser from wife of homestead, community property, title or right to

---

convey subsequently acquired passed immediately to grantee of wife, and invested her prior conveyance with absolute validity.

**16. Judgment ⬿17(3).**

Court has no jurisdiction to render personal judgment against nonresident upon nonresident notice served in another state, and judgment is void.

**17. Judgment ⬿17(3), 490(3).**

In suit foreclosing vendor's lien on land where nonresident was served by nonresident notice in another state, *held* judgment was not void nor subject to collateral attack.

**18. Judgment ⬿504(1).**

In suit to foreclose vendor's lien on land, omission of name of defendant in whom title resided at institution of suit from order of sale cannot be raised collaterally.

**19. Pleading ⬿374.**

Facts alleged by both parties will be accepted as established.

**20. Appeal and error ⬿1074(2).**

In suit to foreclose vendor's lien on land where order of sale omitted name of defendant holding title, purchase of his interest by plaintiff under alias order is permissible, and renders omission harmless.

**21. Adverse possession ⬿114(1)—To show title under 10-year statute of limitation, party must affirmatively show that he and those under whom he claims had peaceable and adverse possession of land for ten years prior to suit.**

To show title to land under ten-year statute of limitation, party must show by preponderance of evidence that he and those under whom he claims had peaceable and adverse possession of the land in controversy, cultivating, using and enjoying it for 10 years prior to suit.

**22. Landlord and tenant ⬿64 — Party who took possession of land under agreement with tenant of former owner held to not hold adversely to present owner.**

Party who took possession of land under agreement with tenant, who was in possession under rental contract with former owner, *held* not to hold adversely to present owner's title, since tenant of former owner became tenant of present owner on sale, and estopped to deny his landlord's title and possession of party who took under him is presumed subordinate to rights of landlord.

**23. Landlord and tenant ⬿53(1).**

Sale by landlord of reversion *held* to not deprive tenant of any rights under lease.

**24. Landlord and tenant ⬿65.**

On sale of reversion by landlord, tenant became tenant of new owner, and estopped to deny his title.

**25. Landlord and tenant ⬿61.**

Tenant is estopped to deny landlord's title.

**26. Landlord and tenant ⬿68.**

Without repudiating rental contract with landlord under which tenant entered and held

possession, he cannot recognize or attorn to another as landlord.

**27. Landlord and tenant ⬿66(2).**

Possession acquired under agreement with tenant, in absence of proof of repudiation of relation, will be regarded as subordinate, not adverse, to rights of landlord to same extent as possession of tenant.

**28. Landlord and tenant ⬿66(2).**

Party taking possession under agreement with tenant cannot hold adversely to landlord without notice and repudiation of relation.

**29. Landlord and tenant ⬿65.**

Estoppel of tenant to deny landlord's title may be asserted not only by the original lessor, but by those succeeding to his title.

**30. Evidence ⬿21.**

In absence of proof to contrary, court will presume, as matter of judicial cognizance, that farm rental contract was the usual one; that is, a renting by the year beginning January 1st.

**31. Landlord and tenant ⬿66(1).**

Party who took possession of farm under agreement with tenant, and claims title by adverse possession, has burden of rebutting presumption that tenant's contract was a renting by year.

**32. Vendor and purchaser ⬿269.**

Owner of vendor's lien notes cannot maintain action for recovery of land until sale under foreclosure and purchase by him.

**33. Limitation of action ⬿48(1).**

Where owner of vendor's lien notes could not bring suit thereon until January 1, 1912, no cause of action arose in his favor, nor did limitation begin to run until then.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Suit by J. D. Wilson against E. N. Beck and others. From a judgment against plaintiff, he appeals. Reversed and rendered.

E. S. McAlester and Thos. W. Thompson, both of Greenville, for appellant.

Smith & Abernathy, of McKinney, for appellees.

LOONEY, J. No useful purpose could be served by stating at any great length the pleadings. Suffice it to say they presented for trial a suit by appellant for recovery of the 45-acre tract of land in controversy, to which the defenses urged by appellees were the general issue, pleas of not guilty, 10-year statute of limitation, and for rents and damages incident to, and growing out of, the possession and use of the land by appellant under the sequestration proceedings sued out by him.

The facts are undisputed, and are as follows:

In 1870 Sam Beck and his wife, Bettie Beck, mentioned in this record also as S. E.

Beck, S. E. Miller, and S. M. Miller acquired 95 acres of land, 45 acres of which is the land in controversy. This tract of land was the community property and homestead of Sam and Bettie Beck. Two children were born to them, the appellees herein, E. N. Beck and his sister, Mrs. Dollie Webb, also referred to as Dollie Phillips.

.In 1872 Sam Beck was adjudged a lunatic by the county court of Collin county was admitted to the asylum for the insane at Austin, where he remained until his death which occurred February 20, 1920. He was without a guardian, died intestate, and no administration was ever opened on his estate. He was never divorced from Bettie Beck, nor was he ever discharged from the asylum.

In 1876 Mrs. Beck formed an alliance with a man by the name of Miller, with whom she lived as his wife four or five years, until his death, and by whom she had. two children.

In 1897, acting under the belief that Sam Beck, the husband and father, was dead, Mrs. Bettie Beck and the two Beck children agreed upon a settlement and partition of the community estate of Sam and Bettie Beck, and, to this end, Bettie Beck, the mother, and Dollie Webb, the daughter, joined by her husband, W. R. Webb, executed a deed conveying to E. N. Beck 25¾ acres out of the 95-acre tract. The deed contains, among others, the following recitals:

"This is the deed of S. E. Miller, a feme sole, formerly the wife of Sam Beck, deceased, and subsequently the wife of J. A. Miller, also deceased. and W. R. Webb, joined by his wife, M. E. Webb, to E. N. Beck."

Also the following:

"And the further consideration of making a division of the estate of Samuel Beck, deceased."

In further consummation of said partition and settlement, Bettie Beck and E. N. Beck and his wife, M. A. Beck, executed a deed conveying to W. R. Webb and his wife, M. E. Webb, 25¾ acres of land out of the 95-acre tract before mentioned. This deed recites, among other things, the following:

"S. E. Miller, a feme sole, formerly the wife of Samuel Beck, deceased, subsequently the wife of J. A. Miller, also deceased, and E. N. Beck, joined by his wife, M. A. Beck, all of the county and state aforesaid, to W. R. Webb and wife, M. E. Webb. * * *"

This deed also contains the following recital:

"And the further consideration of making a division of the estate of the said Samuel Beck, deceased."

No written conveyance was made by the Beck children to their mother to the 45 acres in controversy, but the partition and settlement was acted upon by all parties. E. N. Beck took possession, improved and resided upon the 25¾ acres conveyed to him, and it was in his ownership at the time this case was tried. Dollie Webb took possession and control, and afterwards sold the 25¾ acres conveyed to her, and it is now in the possession and ownership of the parties claiming under and through her. Mrs. Bettie Beck, or Miller, retained possession of the 45 acres in controversy, being the remainder of the 95-acre tract. She used the land, and enjoyed the rents and revenues therefrom exclusively from the time of said partition and settlement until September 26, 1910, and on the latter date sold and conveyed the same to D. T. Phillips, reciting in the conveyance to Phillips that she was a "feme sole." The recited consideration for this conveyance was $1,490 cash, and $1,490 evidenced by five vendor's lien notes, negotiable in form, bearing 8 per cent. interest per annum and containing the usual provisions for the payment of 10 per cent. attorney's fees, and for accelerated maturity in case of default. In these notes, and also in the deed conveying the land to Phillips, a lien was expressly retained on the land to secure the payment of the notes according to their tenor.

On October 17, 1910, D. T. Phillips and wife conveyed the land to C. E. Freeman, subject to the lien of the purchase-money notes just described, but there was no personal assumption of the indebtedness by Freeman.

The appellant became the holder and owner of these notes, and, after default in the payment of the first two, exercised the option to declare the other three due, and thereupon filed suit in the district court of Collin county on, to wit, January 18, 1913, for the debt and to foreclose the vendor's lien on the land against S. E. Miller, the grantor in the deed, D. T. Phillips, grantee and maker of the notes, and C. E. Freeman, the purchaser of the land from Phillips.

These defendants were duly cited, Mrs. Miller, or Beck, by a nonresident notice, as she was at the time a resident of the state of Oklahoma. Neither of the defendants answered and, on September 23, 1913, judgment by default was rendered against them. On motion, however, filed at the same term of court by the defendant Freeman, the judgment was set aside. It was disclosed in the motion for new trial filed by Freeman that the defendant S. E. Miller (Bettie Beck) was a married woman, and that her husband, Sam Beck, was alive and a necessary party to the suit. Sam Beck was never made a party, the case seems to have slumbered on the docket in this status until after his death, when, on May 24, 1920, appellant took judgment by default against D. T. Phillips and Mrs. Miller for the amount of the debt, interest, and attorney's fees, to wit, $3,449.50, with interest thereon at 8 per cent. per annum, and foreclosure of the vendor's lien on

the land as to all defendants. The land was sold on September 7, 1920, by virtue of an order of sale that issued on this judgment, and at the sale was purchased by appellant on his bid of $300. The land at the time seems to have been of a fair value of $9,000.

The order of sale under which this was accomplished omitted entirely any mention of C. E. Freeman, one of the defendants, but it appears that, after the institution of this suit, under an alias order of sale correctly describing the judgment, the land was, on February 1, 1921, levied upon, advertised, and the interest of C. E. Freeman sold, appellant also becoming the purchaser at this sale. The facts with reference to the alias order of sale are to be found in the allegations of both appellant and appellees, and were in that manner presented to the court below and to this court.

On January 21, 1921, appellant sequestered the property, and, as E. N. Beck, who was in possession at the time, failed to replevy, appellant in due time executed and filed a replevy bond with W. A. Wilson and J. B. Wilson, Jr., sureties, and took possession of the property.

The rental value of the land from the date appellant took possession under the replevy bond to the time of trial, to wit, September 20, 1924, was $1,627.50. During this period the premises were damaged in the sum of $1,200 by the destruction of a barn by fire, and because the land was permitted to become foul from noxious grasses.

On September 28, 1910, the second day after his mother conveyed the land to D. T. Phillips, and ten years and two days prior to the filing of this suit, E. N. Beck moved on the land possessed, improved and used the same until dispossessed by sequestration in 1921. At and prior to the time E. N. Beck moved on the land, as just stated, it was occupied by and in the possession of his son-in-law, a man by the name of McDonald, who held under a rental contract between him and the former owner, Mrs. Miller, or Beck, and E. N. Beck was permitted to enter into and upon the premises under an agreement made with this son-in-law.

As the conclusion of fact on this point is on a pivotal question, we will quote the testimony of E. N. Beck upon which the same is based. Beck said:

"My son-in-law, McDonald, was living upon the land in question, and occupied same under a rental contract from my mother at the time the deed was made to the land in question to D. T. Phillips. A few days after the deed was executed by my mother and the other parties to the land in question, not more than three or four days afterwards, I moved onto the land. * * * I had an agreement with my son-in-law by which I was to take possession of the land and premises in question."

Beyond the testimony of Beck as just quoted there is nothing in the record show-ing the duration, nature, or terms of the rental contract between Mrs. Beck (or Miller) and McDonald.

The case was tried without the intervention of a jury, and resulted in judgment against appellant and in favor of E. N. Beck on his plea of limitation against appellant Dollie Webb and her husband, W. R. Webb, Mrs. Sam (Bettie) Beck, and C. E. Freeman, and also against appellant and sureties on his replevy bond, in the sum of $2,827.50. It was further adjudged that Mrs. Sam (Bettie) Beck and C. E. Freeman take nothing by their pleas of intervention.

The court gave judgment against appellant and in favor of appellee E. N. Beck on the grounds: (1) That appellant failed to show title to the land in himself at the institution of the suit; and (2) that E. N. Beck established title in himself under the ten-year statute of limitation. Appellant alone appeals, assigns error, and urges propositions challenging the correction of the conclusions and judgment of the trial court.

[1, 2] At the time the partition of the land between Bettie Beck and her two Beck children was attempted, the legal title to the 95 acres was in Sam Beck, the lunatic, but the equitable title to an undivided half interest therein was owned by his wife. The two children, E. N. Beck and Dollie Webb, or Phillips, had no interest in the land, but they did have an expectancy or naked possibility of an inheritance from their father, which was a proper subject of contract and sale.

[3] That an heir apparent may make a valid sale of an expectancy was announced by the Supreme Court in Hale v. Hollon, 90 Tex. 427, 429, 39 S. W. 287, 288 (36 L. R. A. 75, 59 Am. St. Rep. 819). The court said:

"Whatever may be the rule at law it is well settled as stated in Spence's Eq. Jurisdiction, vol. 2, p. 865, that 'a naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated rights of a person as next of kin, may be the subject of contract in equity, which will be equivalent to an assignment of the property if and when it shall fall into possession' "—citing authorities.

Also see Barre v. Daggett, 105 Tex. 572, 575, 153 S. W. 120; Id. (Tex. Civ. App.) 135 S. W. 1099.

[4-6] It is also the settled law of this state that a married woman may make a valid partition of land, even by parol. This doctrine is based on the idea that a partition of land among joint owners or tenants in common is neither within the statute of frauds nor the statute regulating the conveyance of land by married women. A partition is a division, and in no legal sense a conveyance of land, the result of which is to vest the equitable title of the respective shares in the tenants in common to whom allotments are made, the legal title remaining as before.

Stuart v. Baker, 17 Tex. 418; Aycock v. Kimbrough, 71 Tex. 330, 333, 12 S. W. 71, 10 Am. St. Rep. 745; Ikard v. Thompson, 81 Tex. 285, 291, 16 S. W. 1019; Martin v. Harris (Tex. Civ. App.) 26 S. W. 91.

[7-10] It follows as a corollary that, if an expectancy is a proper subject of contract and sale, the incidental matter of partitioning in anticipation of the inheritance, an act of less formality or solemnity, is perfectly legal. The settlement or partition entered into between Bettie Beck and her two Beck children was under the belief that the husband and father was dead. E. N. Beck, appellee, took immediate possession of the 25¾ acres allotted to him, improved, resided upon, and was still the owner at the time of the trial. Dollie Webb, one of the appellees, took possession of the 25¾ acres allotted to her, sold and enjoyed its proceeds, and Bettie Beck retained possession of the 45 acres allotted to her, and, after thirteen years of occupancy, use, and enjoyment, sold and conveyed the same to Phillips, from which transaction originated the vendor's lien notes that formed the basis of appellant's claim. The partition deeds contained these recitals, to wit: "This is the deed of S. E. Miller, a feme sole, formerly the wife of Samuel Beck, deceased, and subsequently the wife of J. A. Miller, also deceased;" also that the conveyance was made in "consideration of making a division of the estate of Samuel Beck, deceased." In the deed from S. E. Miller (Bettie Beck) to D. T. Phillips she described her status as a "feme sole."

Phillips, in purchasing the land from Mrs. Miller (or Beck), in executing the vendor's lien notes as a part of the consideration for the land, and appellant, in purchasing and becoming the owner of the notes that originated from this transaction, are presumed to have contracted with reference to, and on the basis of, these recitals. In view of these undisputed facts, Mrs. Beck and her two Beck children are, in our opinion, estopped to gainsay these recitals, and this without reference to whether they were mistakenly or fraudulently entered in the deeds. It is readily apparent that, if the facts recited in these conveyances had been true, no valid objection could now be raised by either of these parties touching the legality of the partition, nor as to the ownership of or right of Mrs. Beck to convey the land to Phillips, nor as to her right to transfer the vendor's lien notes given by Phillips as a part of the consideration.

It follows, therefore, that, whether these recitals were mistakenly or purposely made, Bettie Beck and her two Beck children are estopped to deny their truth, for, if innocently made, they were as misleading and damaging as if entered intentionally for the purpose of deceiving. Heirs of Shelby Corzine v. Williams, 85 Tex. 499, 506, 22 S. W. 399;

Millican v. McNeill, 102 Tex. 189, 192, 114 S. W. 107, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74; Cope v. Blount, 99 Tex. 431, 433, 90 S. W. 869; Rutherford v. McGee (Tex. Civ. App.) 241 S. W. 629, 632, 633.

Appellees vigorously combat this view, and rely for support chiefly on the rule announced in Daniel v. Mason, 90 Tex. 240, 38 S. W. 161, 59 Am. St. Rep. 815. Neither of the cases cited by appellees is in point, for the reason that they are lacking in the element of positive fraud. Where deceptive and damaging recitals are shown with reference to which parties contract, an entirely different rule controls.

The law affords ample protection to a married woman, but, where she either mistakenly or purposely assumes the status of a feme sole, and parties contract with her with reference to that status, she will not thereafter be permitted to repudiate transactions thus consummated, to the injury and damage of persons who were misled.

In the case of Jones' Estate v. Neal, 44 Tex. Civ. App. 412, 420, 98 S. W. 417, 420, the court, in passing on the conduct of a married woman who recited in a power of attorney that she was a feme sole, said:

"Mrs. Stephens was not joined by her husband, but it was recited in the power of attorney that she was a feme sole, and there was the further representation that those who executed the power of attorney were the only heirs of Mrs. M. M. Neal. Both of those recitals were false. The law extends its protection to the rights of married women, but it does not license them to perpetuate frauds on those with whom they deal, to their injury. Mrs. Stephens having represented that she was a feme sole, and that she and others who executed the power of attorney were the only heirs of M. M. Neal, and the party who bought the land from her attorney in fact acted on that representation, and on grounds of public policy and good faith, she is estopped from repudiating the act."

The court cites a number of cases in support of the principle announced, among others the case of Corzine v. Williams, supra, from which it made the following quotation:

"The doctrine of an estoppel by deed is essentially different from that of an estoppel in pais, and is founded upon the theory that the parties have contracted upon the basis of the recited facts."

After this quotation, the opinion proceeds:

"The recitals in the power of attorney represented that Mrs. Stephens was a single woman, and, upon the basis of that recitation, the land was sold. By that recitation she perpetrated a fraud upon her vendee, and she cannot be heard to repudiate it after she enjoyed the fruits of the sale."

Also see Cravens v. Booth, 8 Tex. 244, 58 Am. Dec. 112; O'Brien v. Hilburn, 9 Tex. 297; Ryan v. Maxey, 43 Tex. 192, 195, 196;

Keller v. Lindow (Tex. Civ. App.) 133 S. W. 304, 307.

[11-13] Appellees insist, because it is not shown that these conveyances contained covenants of general warranty, that the doctrine of estoppel as to the interests acquired on the death of Samuel Beck would have no application. These deeds were not copied in the record in extenso, but it appears that "deeds" nevertheless were executed containing the recitals quoted above. The commonly accepted meaning of the word "deed" is that it is an instrument in writing, duly executed and delivered, conveying real estate as distinguished from a mere quitclaim. Jones v. Phillips, 59 Tex. 609, 611; Lockridge v. McCommon, 90 Tex. 234, 239, 38 S. W. 33; 18 C. J. 147, note 17. It is not, in our opinion, essential that a deed should contain covenants of warranty in order for the doctrine of estoppel to apply, for this, whenever a deed is executed under circumstances that will estop the grantor to dispute the title of the grantee, any title or right with reference to the property subsequently acquired by the grantor will immediately pass to the grantee.

[14, 15] As we view this case, the partition of the 95 acres of land between Bettie Beck and her two Beck children, the acceptance by each of the land allotted, the false recitals contained in the partition deeds and in the deed from Bettie Beck to Phillips, estopped them to dispute the title of appellant acquired upon reliance in the truth of these recitals. Any title, therefore, that was subsequently acquired, or any right to convey that was subsequently invested on the death of Samuel Beck, passed immediately to the grantee of Bettie Beck, and invested her prior act of conveyance with absolute validity. This view, we believe, is fully sustained by the following authorities: Lindsay v. Freeman, 83 Tex. 259, 264, 265, 18 S. W. 727; Baldwin v. Root, 90 Tex. 546, 553, 40 S. W. 3, 6.

In the latter case the court said:

"The rule most consistent with our system of laws upon this subject is that when one conveys land by warranty of title or in such manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land by the grantor will pass eo instanti to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either."

[16, 17] Appellees make the further contention that the judgment relied on by appellant to support the sheriff's deed, in so far as it affects the rights of Bettie Beck, E. N. Beck, and Dollie Webb, is void, in that it was a personal judgment rendered against S. E. Miller (Bettie Beck) upon nonresident notice served on her in the state of Oklahoma, where she at the time resided.

It may be conceded that the court was without authority to render a personal judgment against Mrs. Miller for the debt, and, to that extent, that the judgment is void. In so far, however, as the judgment is against Phillips for the debt, and forecloses the vendor's lien on the land as to the other defendants, including Mrs. Miller, it is not void, nor subject to collateral attack. The void feature of the judgment is in no way involved in this controversy, as it is under the undisputed valid provisions of the judgment that reliance is placed by appellant to sustain his claim to the land.

[18-20] Appellees further urge the proposition that the order of sale under which appellant purchased the land was void, in that it omitted the name of C. E. Freeman, the defendant in whom the title resided at the institution of the foreclosure suit, but against whom no personal judgment for debt was rendered. While the order of sale failed to mention Freeman as one of the defendants, it did specifically direct the sale of the land on which the lien of an established indebtedness was foreclosed.

The case of Capps v. Leachman, 90 Tex. 499, 39 S. W. 917, 59 Am. St. Rep. 830, is called to our attention in support of the proposition that the order of sale in question is void and subject to collateral attack. That case presents to our minds an entirely different question from the one presented here. The Supreme Court held in that case that the execution issued to enforce a judgment for the recovery of money was void because it omitted entirely to mention the name of the defendant whose property was subject to the satisfaction of the judgment. No personal judgment was rendered against Freeman, simply a foreclosure as to him. The order of sale directed the sale of the land to satisfy the ascertained indebtedness. In our opinion, the omission of the name of Freeman from the order of sale was an irregularity that cannot be called in question in a collateral way, such as is attempted here. Allen v. Pierson, 60 Tex. 604, 607; McKennon v. McGown (Tex. Sup.) 11 S. W. 532; White v. Taylor, 46 Tex. Civ. App. 471, 102 S. W. 747; Ayres v. Duprey, 27 Tex. 603, 86 Am. Dec. 657; Graves v. Griffin (Tex. Com. App.) 228 S. W. 913.

In Ayres v. Duprey, supra, Judge Moore, for the Supreme Court, said:

"It seems, however, to be abundantly settled, that the question of irregularity or error in the execution, or the proceeding under it by the sheriff, can never be discussed collaterally in another suit. It cannot be made a question, it has been said, in an action in ejectment. When a party in a collateral action claims title under a sheriff's deed, the court cannot look into alleged irregularities in the process or proceeding of the sheriff. Nor could it in such a case make a decree avoiding the sale, and at the same time protect the interest of all parties, whose interest would be thereby affected."

If, however, we should be in error in holding that the order of sale is simply irregular, and not subject to collateral attack, still it is made to appear from the pleadings of both parties that, during the pendency of the suit, an alias order of sale was issued correctly describing the judgment, under which the land was duly advertised and sold, the appellant becoming the purchaser. The facts with reference to the alias order of sale and the proceedings thereunder, having been alleged by both parties, will be accepted by the court as established. Graham v. Henry, 17 Tex. 166; Ogden v. Bosse, 86 Tex. 344, 24 S. W. 798.

The purchase by appellant of this land under the alias order pending the suit was permissible, and is a complete answer to the criticism leveled at the original order of sale and the purchase by appellant thereunder.

In the case of Ballard v. Perry, 28 Tex. 348, the Supreme Court held that, where a defendant relied on an outstanding title to defeat recovery by the plaintiff, it was competent for plaintiff to rebut such defense by introducing a conveyance executed after the commencement of the suit.

In Keyes v. H. & G. N. R. Co., 50 Tex. 169, the Supreme Court held that pending an action of trespass to try title it was permissible for plaintiff to buy from heirs of a party whose undivided interest plaintiff claimed through a defective administration, and that such purchase would meet the plea of outstanding title to such interest.

In Vineyard v. Brundrett, 17 Tex. Civ. App. 147, 42 S. W. 232, the Court of Civil Appeals held that, where plaintiff in trespass to try title was the equitable owner of the land when suit was begun, it was not error to admit in evidence a deed conveying legal title, though executed after the filing of the suit.

In Kerr v. Hill (Tex. Civ. App.) 31 S. W. 1089, the plaintiff pending the suit had the defendant's interest in the land sold under execution, and, on becoming purchaser, was permitted to set up the title thus acquired in an amended pleading.

In harmony with these views, we hold that appellant established his right to recover, unless defeated by ten-year limitation in favor of E. N. Beck. This question we will now discuss:

[21] The law in regard to ten-year limitation is very satisfactorily stated by Judge Neill in McAllen v. Crafts (Tex. Civ. App.) 139 S. W. 41, 42, as follows:

"In order to show that title has been acquired under the 10-year statute of limitation each of the statutory requirements must be proved by preponderance of the evidence. In other words, it was incumbent upon appellants to show affirmatively that they and those under whom they claim had peaceable and adverse possession of the land in controversy, cultivating, using and enjoying the same for 10 years prior to the institution of this suit."

[22] Appellee E. N. Beck had been in possession of the land in controversy, cultivating, using, and enjoying the same for ten years and two days prior to the filing of the suit. The material question, however, is, Was his holding adverse to the title under which appellant claims for ten years prior to the time suit was filed? We do not think so, for the reason that, when he entered and took possession of the land, and began its use and enjoyment, he did so under an agreement with McDonald, his son-in-law, who was at the time occupying and in possession of the land under a rental contract with Mrs. Miller, or Beck, the former owner.

[23-26] The sale by Mrs. Miller of the reversion to Phillips did not terminate the tenancy of McDonald or deprive him of any rights under the lease. 16 R. C. L. 634, § 118, 35 C. J. 1214, § 544. McDonald was, at the time the agreement was made between him and E. N. Beck, in contemplation of law, the tenant of Phillips, and was, therefore, estopped to deny his landlord's title. Fowler v. Simpson, 79 Tex. 611, 617, 15 S. W. 682, 23 Am. St. Rep. 370; Richardson v. Houston Oil Co. (Tex. Civ. App.) 176 S. W. 628; 35 C. J. 1224, § 565, p. 1231, § 573; 16 R. C. L. 649, § 37. Neither was it within the power or right of McDonald, without repudiating the rental contract under which he entered, and at the time held possession, to recognize or attorn to another as landlord. Tyler v. Davis, 61 Tex. 674.

[27, 28] This rule applies with equal force to E. N. Beck, who was let into the possession by McDonald. The possession thus acquired by him, in the absence of any proof of a repudiation of the relation, will be regarded as subordinate, and not adverse, to the rights of Phillips, the landlord, to the same extent as the possession that was held by McDonald. Beck, having placed himself in the shoes of McDonald, the tenant, is bound by the allegiance that a tenant owes his landlord, and cannot throw it off at will without notice and repudiation. 16 R. C. L. p. 664, § 150.

[29-31] The estoppel of a tenant to deny his landlord's title may be asserted not only by the original lessor, but also by those who succeed to his title. It is to the title under which the tenant enters that the estoppel relates, and not the individual owner of the title. 16 R. C. L. p. 670, § 156. But it is contended by appellees that it was not shown whether the tenancy of McDonald was from day to day, week to week, month to month, or at will, and, therefore, that the deed from Mrs. Miller to Phillips terminated the tenancy of McDonald, and that he never at any time became the tenant of Phillips. It is quite true that the record fails to disclose anything with reference to the nature, terms, or duration of the rental contract between Mrs. Miller and McDonald further than the

simple statement that McDonald was "holding same under a rental contract" from her. In the absence of proof to the contrary, the court, as a matter of judicial cognizance, will presume that the contract was the same as the prevalent rental contracts between landlords and tenants in regard to farm lands throughout this country; that is, a renting by the year, beginning January 1st. If the relation of the parties was otherwise, the burden was on appellee to establish the fact as a part of the proof necessary to sustain his plea of limitation. It is our conclusion, therefore, that E. N. Beck failed to show that his possession of the land was adverse for the statutory period, and, in thus failing, his claim based on limitation must fail.

[32, 33] There is still another reason why Beck's claim of limitation must be denied, and that is this: Appellant was not the owner of the land, and could not have maintained an action for its recovery until it had been sold under foreclosure and purchased by him. As the owner and holder of the vendor's lien notes, he could not have brought suit thereon prior to the maturity of the first note, to wit, January 1, 1912. In this situation, no cause of action arose in his favor, nor did limitation begin to run against him until January 1, 1912.

In the case of White v. Pingenot, 49 Tex. Civ. App. 641, 90 S. W. 672, the court held that one who purchased from a judgment debtor, against whose land a judgment lien existed, obtained title by limitation against the judgment creditor where the purchaser's possession, use, and holding of the land was of such character and length of time as would sustain the claim, and that limitation commenced to run against the judgment lienor from the time of the entry by the purchaser.

In that case the contention was made that the judgment creditor had no cause of action against the judgment debtor or his vendee. Therefore no right of action could have accrued until a foreclosure and sale, and then only in favor of the purchaser at such sale. This contention was denied. The court held that the judgment creditor had the right at any time to have the land sold under execution, and, after sale, to proceed in an action for its recovery, and, further, that he could have proceeded against the purchaser, in an action based upon his lien, to have the land subjected to the satisfaction of his judgment, but the judgment creditor remained inactive, and took neither course until the adverse possession of the purchaser matured into a title under the statute of limitation. The reason for the holding is shown by the following excerpt from the opinion:

"From this, and the cases cited in the opinion, it would seem that the appellee in this case, having a judgment lien on the land in controversy, could, at the moment Mrs. White bought it from Vivion, have instituted suit against her, based upon his lien, to cancel her deed and subject the land to his judgment lien. This remedy would have been as effectual as a suit of trespass to try title brought after sale of the land under execution. * * * There was not, in all the time it is claimed limitations was running in favor of appellants, a single month that appellee could not have had the land sold under execution issued on his judgment, bought it in, and brought suit against them and recovered the land."

The doctrine announced in the above-cited case, applied to the facts of the case under consideration, means that limitation did not commence to run against appellant until the maturity of the first of the series of five notes on, to wit, January 1, 1912, that being the earliest date that he could have filed suit for debt and foreclosure on the vendor's lien notes. For this additional reason Beck failed to establish his claim of ten-year limitation.

For the reasons hereinbefore stated, we believe the trial court erred. Therefore the judgment below will be reversed, and judgment here rendered for appellant.

Reversed and rendered.